## HENRY M. HANSEN v. GEORGE K. BELDEN AND ANOTHER.[1]

December 8, 1922.

No. 23,143.

**Verdict for negligent driving sustained.**

> Plaintiff was injured as the result of a collision of the car which he was driving with one of the defendant's negligently operated by a servant. The evidence *held* ample to sustain a verdict of $4,000 in favor of plaintiff.

Action in the district court for Hennepin county to recover $5,000 general and $285.70 special damages for injuries caused by the reckless driving of defendants' automobile. The case was tried before Molyneaux, J., who when plaintiff rested denied defendants'. motion for a directed verdict, and a jury which returned a verdict for $4,000. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Hoke, Krause & Faegre, Tracy J. Peycke* and *H. P. Quealy*, for appellants.

*Larrabee & Quigley*, for respondent.

QUINN, J.

Action to recover damages for personal injuries sustained by the plaintiff on February 5, 1921, as the result of a collision between the automobile which he was driving and an automobile belonging to the defendants, operated by a servant. There was a verdict for $4,000 in favor of plaintiff. From an order denying their alternative motion for judgment or a new trial, defendants appeal.

But one question is raised on this appeal, and that is the amount of the verdict. Respondent was 32 years of age at the time of the trial. He was employed as a trucker, in handling and wheeling bundles, boxes and the like from place to place, and received therefor

[1]Reported in 190 N. W. 988.

about $125 per month. This case was tried in April, 1922. The accident in question took place at the intersection of Chicago and Franklin avenues in the city of Minneapolis. The respondent was driving east along Franklin avenue at about 10 miles per hour, when appellant's servant came along south on Chicago avenue at about 30 or 35 miles per hour with a Ford sedan, and struck appellant's car on the side about in the center.

Immediately after the impact, those who witnessed the accident went to the assistance of respondent. He was lying over or across the steering wheel, apparently in a dazed or stunned condition; he did not speak. When lifted out and onto his feet, he appeared dizzy. Shortly thereafter he drove the car to his father's home and later went on the street car to his own home. There was a bruise on his head and one on his shoulder, both of which later disappeared. Shortly after reaching home he was examined by Dr. Neal. On the following day he went to a hospital where an X-ray was taken. On February 9 Dr. Hartig was called. He found a low pulse and sent the patient back to the hospital, where he remained some 12 days until his pulse was normal and then returned home. On March 9 he returned to his work. While at work, when he exerted himself he experienced dizziness and during the summer had some 20 or more dizzy spells and also three or four fainting spells, and in March, 1922, he had a fainting spell which lasted quite a few minutes.

It is conceded that appellants are liable and should be held for whatever damages respondent suffered as the result of the accident, nor do they question the items of special damages, but they assert that there is no showing in the record but that respondent is able to do his work in his usual manner, and it is strongly urged that the proofs fail to show that the dizziness and fainting spells were the result of the accident, or that the respondent's injuries are permanent, and that without such showings the damages allowed must be held to be grossly excessive.

There was considerable medical testimony offered upon the trial. Dr. Hartig, plaintiff's physician, testified that he first examined respondent on February 9, and found a swelling behind and a little

above the patient's left ear, about an inch and a half wide and two inches long, slightly depressed in the center and soft; that his pulse was beating at the rate of only 56 beats per minute, which indicated that there was some increased pressure inside the skull; that he put him to bed in a hospital and kept him there 12 days, when his pulse became normal; that there was not the slightest question in his mind but that the fainting spells were due to ·the accident; that his theory was that first the respondent suffered from concussion, then had a lucid interval, but at the time of the injury some blood vessels were ruptured inside, and blood is gradually seeping in there, and from that time he began to show evidence of pressure on the brain; and that there are two things which may follow an injury of that kind, hysterics and epilepsy.

Dr. Neal testified that it was impossible for him to say whether these attacks were hysterical or epileptic in nature. Dr. Schefcik testified that it was impossible to say whether these attacks were hysterics or epilepsy, that epilepsy is a disease due to organic changes, some organic lesion, to some condition of interference with the normal functions of the brain, while hysterics is purely a nervous condition. Dr. Bissell said that he was unable to give an opinion as to whether the attacks were attributable to the injury complained of; that, if there was a hemorrhage of the type described, he doubted if the patient would ever get well.

A majority of the court is of the opinion that the testimony made it a question for the jury as to whether the dizziness and fainting spells were attributable to the accident, and whether the injuries were permanent, and think that, under such circumstances, the amount of the verdict is not such as to warrant this court in interfering therewith. The writer does not concur with the majority in this conclusion.

Affirmed.